**UNITED STATES of America,**

v.

**Mark Anton DOLINGER a/k/a Marc Anton Delanier, Defendant.**

**No. 73 Cr. 390.**

United States District Court, S. D. New York.

Oct. 18, 1974.

---

Paul J. Curran, U. S. Atty., S. D. New York, New York City, for the U. S.; V. Thomas Fryman, Jr., George E. Wilson, Asst. U. S. Attys., of counsel.

Jerry E. Berg, Palo Alto, Cal., for defendant; Edward N. Leavy, New York City, of counsel.

## OPINION

EDWARD WEINFELD, District Judge.

The defendant is charged with a knowing failure to report for induction into the Armed Forces of the United States in violation of 50 Appendix, U.S. C.A., section 462(a) and regulation 32 C.F.R., section 1641.5 (1973).[1]

The defendant registered with Local Board 4, New York City, on February 23, 1966. He was classified 1–A in April 1966. At a pre-induction physical examination he was found qualified, following which he was ordered, on September 26, 1966, to report for induction on October 10, 1966. However, before that date he requested a 2–S student classification, which was granted. He retained this until May 8, 1969, when he was reclassified 1–A.

On May 29 the Board received a medical report from Columbia Presbyterian Hospital outlining defendant's treatment there between August 1968 and May 1969 for chest pains, acute shortness of breath and chronic coughing. As a result, on June 17, 1969, the defendant was ordered to report for another physical examination on June 24, which he failed to do. On June 25 another order was sent to him to report for a physical examination, this time on June 30th. Again, he failed to report, but on July 22 the Board received a letter from the defendant stating that he had just returned to New York after a six-week stay in California and that the notice to report for a physical examination had not been forwarded to him. He requested an examination at another examining center, preferably the West Coast. The Board responded on August 5th with an order to defendant to report to a New York City examining center for a physical examination on August 12; again he failed to appear.

There followed over the next several months correspondence between the defendant and the Board in which at various times the defendant requested a transfer of his physical examination to a California Board and/or offered an excuse for not appearing for a scheduled examination. The Board approved the requests for such a transfer, gave the defendant instructions regarding it, and informed him that he was under a continuing obligation to report for an examination and should do so by a certain date. He failed to do so. Finally, following his failure to report for a scheduled examination at a Los Angeles, California examining center on January 8, 1970, his papers were returned to the New York Board in February. On June 5, 1970, the Board sent him an order to report for induction on June 29th; he failed to do so. The Board received a letter from the defendant on November 9, 1970, a phone call from him on December 15, another letter from defendant and one from a physician on August 10, 1971, but the defendant still had not reported for induction. The Board continued its efforts to have defendant comply with the induction order.

On November 9, 1972, the Board wrote to the defendant, making reference to his previous failures to report, and advised him of his "continuing duty" to report (hereafter the "continuing duty" letter). The letter stated:

"Because of your failure to report as previously ordered, the Armed Forces Examining . . . Station . . . will be expecting you [on] . . . November 20, 1972 at 7:30 a. m. at . . . 201 Varick Street, New York. . . . If you again fail to report and comply with this letter, you will be subject to immediate prosecution."

The letter was sent by registered mail to defendant at the address defendant had given in his August 10, 1971 letter to the Board. The return receipt was re-

---

1. The indictment refers to a predecessor regulation, 32 C.F.R. § 1632.14.

ceived by the Board on November 14, 1972 with a delivery date of November 11, 1972, signed by "Mrs. I. Dolinger" as agent of the addressee, "M. A. Delanier." Mrs. I. Dolinger is the defendant's mother. The defendant failed to report for induction on November 20 and it is that failure which is the subject of the instant indictment.

At the close of the government's case the defendant moved for a judgment of acquittal on two grounds: (1) the "continuing duty" order was void for lack of Selective Service jurisdiction to create a continuing duty spanning the 1967 Military Selective Service Act and the 1971 Draft Extension Act; and (2) the evidence is insufficient to show that the defendant possessed the knowledge necessary to sustain a conviction.

We first consider the defendant's jurisdictional attack. This is based upon a change in the Selective Service law between the time the induction order was sent to the defendant in June 1970 and the time the "continuing duty" letter was mailed to him in November 1972. The June 5, 1970 order was issued under the Military Selective Service Act of 1967, then in effect, which provided:

"Notwithstanding any other provision of this title . . ., no person shall be inducted for training and service in the Armed Forces after July 1, 1971, except persons now or hereafter deferred under . . . [section 456 of this appendix] after the basis for such deferment ceases to exist." [2]

Thus, between the date of the induction order to defendant and that of the "continuing duty" letter, the Selective Service induction authority expired except as to those who had been granted deferments under 50 App. U.S.C., section 456. After the Board's authority to induct

had ceased to exist on July 1, 1971, with the exception as noted, Congress, on September 28, 1971, passed the Draft Extension Act of 1971,[3] which extended the induction authority to July 1, 1973, retroactive to July 2, 1971.

The defendant, citing a Ninth Circuit Court of Appeals ruling,[4] contends (1) that the authority to induct individuals under the 1967 Military Selective Service Act ceased on July 1, 1971, and that the "continuing duty" letter of November 9, 1972, based on the June 5, 1970 order of induction, was issued without authority and void; and (2) that Congress did not intend to revive such void orders when it amended section 467(c) on September 28, 1971.

The *Carrillo* case did not consider or pass upon the factual situation here presented and it is inapposite to the instant case. Here, the defendant, prior to the issuance of the June 5, 1970 order for his induction, had been granted a student deferment pursuant to section 6 of the 1967 Act,[5] which deferment had been revoked on May 8, 1969, when he was no longer a full-time undergraduate student.[6] As noted above, the 1967 Act contained an exception which specifically authorized induction after July 1, 1971 of persons receiving such deferments. It is clear that the Board's authority continued after July 1, 1971 to act as to those persons who had been deferred and who were within the exception. The defendant was within the exception, and the order of induction of June 5, 1970 did not become void when the general induction authority ended on July 1, 1971. Thus, the defendant was still eligible for induction when the "continuing duty" letter was sent to him on November 9, 1972.

The defendant contends, however, that he does not fall within the ex-

---

2. 50 App. U.S.C. § 467(c).

3. Pub.L. No. 92–129, § 101(a)(35), 85 Stat. 348.

4. United States v. Carrillo, 497 F.2d 559 (9th Cir., 1974), amended, reh. denied June 10, 1974.

5. 50 App. U.S.C. § 456.

6. The defendant was granted student deferments from October 13, 1966 to January 12, 1967 and from March 9, 1967 to May 8, 1967.

ception under section 467(c) since he had been classified 1–A for a period of almost two years prior to July 1, 1971. He argues that the extension provided under section 467(c) should be applied only to those who had deferments on July 1, 1971, the date the induction authority terminated under the 1967 Act, and whose deferments thereafter were terminated. He cites no authority for so limiting the exception, and the courts that have considered the issue uniformly have held otherwise.[7] Furthermore, this court can find nothing in the statute or its legislative history that gives the slightest support to defendant's argument. I hold that the 1967 Act authorized the induction after July 1, 1971 of any person who, prior to July 1, 1971, was granted a deferment that was terminated either before or after that date.[8]

■ An additional ground exists for denial of the defendant's motion. Section 4(a) of the 1967 Military Selective Service Act[9] states:

"*Provided further*, That, notwithstanding any other provision of law, any registrant who has failed or refused to report for induction shall continue to remain liable for induction and when available shall be immediately inducted."

Since defendant had failed or refused to report pursuant to the induction order of June 5, 1970, this provision clearly applied to him. Thus the Board, pursuant to this provision, acted within its authority in sending to the defendant the "continuing duty" letter.

The foregoing disposition makes it unnecessary to discuss defendant's further contention that the 1970 order to report for induction was cancelled by operation of law on July 2, 1971, the effective date of the 1971 Draft Extension Act, and was not revived by that Act.[10]

The motion for judgment of acquittal for lack of Selective Service jurisdiction is denied.

We now turn to defendant's motion for acquittal upon the ground that the evidence is insufficient to show that the defendant possessed the knowledge necessary to sustain a conviction. At the close of the government's case the defendant moved for a directed verdict of acquittal, which the court denied. The defendant then rested and renewed the motion upon the close of the entire case, and again the motion was denied. The defendant argues that no actual notice

7. *See* United States v. Case, 344 F.Supp. 169, 175 (W.D.Mo.1972); Olar v. Tarr, 336 F.Supp. 1044, 1049 (N.D.Ill.1972); Gruneich v. Tarr, 336 F.Supp. 1147 (N.D.Cal.1971); United States v. Jones, 336 F.Supp. 878 (N. D.Cal.1971).

8. The defendant points out that the defendant in United States v. Carrillo, 497 F.2d 559 (9th Cir. 1974), amended, reh. denied, June 10, 1974, had received a high school student deferment under the 1967 Act, evidence of which was in the record before the Court of Appeals. On the original appeal, however, neither side raised the issue of the deferment exception to section 467(c), and the court's opinion does not discuss it. "Questions which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not to be considered as having been so decided as to constitute precedents." Webster v. Fall, 266 U.S. 507, 511, 45 S.Ct. 148, 149, 69 L.Ed. 411 (1925); *see* Bard-Parker Co. v. Com-

missioner, 218 F.2d 52, 57 (2d Cir. 1954), cert. denied, 349 U.S. 906, 75 S.Ct. 582, 99 L.Ed. 1242 (1955); Perkins v. Endicott Johnson Corp., 128 F.2d 208, 216 (2d Cir. 1942), aff'd, 317 U.S. 501, 63 S.Ct. 339, 87 L.Ed. 424 (1943); Schram v. Robertson, 111 F.2d 722, 725 (9th Cir. 1940). In *Carrillo*, the government raised the deferment issue for the first time in its petition for rehearing; the court denied the petition, however, without mentioning it. This court does not find in that denial a decision on the merits of the deferment issue.

9. 50 U.S.C. App. § 454(a).

10. *See* United States v. Guerts, No. 73–1648 (9th Cir., Sept. 7, 1973) (under the terms of the 1971 Act, which extended the induction power and was made retroactive to July 2, 1971, "the statutory power to induct never lapsed."); McGrew v. Tarr, 469 F.2d 1087, 1088 (9th Cir. 1972), cert. denied, 411 U.S. 918, 93 S.Ct. 1557, 36 L.Ed.2d 311 (1973).

has been shown and that therefore the proof is insufficient to sustain a conviction. This argument ignores the trial record.

■■ The government's evidence established that the "continuing duty" letter of November 9, 1972 was delivered by registered mail to the last address that the defendant had given the Board and that the letter was received at that address by the defendant's mother. Neither the defendant nor his mother testified. No inference may be drawn adverse to the defendant by reason of his failure to testify on his own behalf and none is inferred. However, though the mother was an available witness, her testimony was not offered. Obviously she had information of significance. Thus proof was available as to where the defendant was living at the time of the receipt of the letter;[11] as to whether or not he was at the mother's home between the date of its delivery and November 20, 1972, when he was due to report for induction;[12] and, most important, as to whether or not it was delivered to him by the mother or whether he was informed of its contents before November 20, 1972.[13] The failure of the defendant to call his mother to testify as to what transpired following receipt of the letter permits an adverse inference.[14]

■ Indeed, entirely apart from the signature of the mother on the return registered receipt, the record establishes that the "continued duty" letter was duly mailed to defendant at the address furnished by him to the Board and that it was not thereafter returned to the New York Board. Absent any evidence to the contrary, this was sufficient to create a rebuttable presumption that the notice was received by the defendant.[15]

■ Upon the entire case I find beyond a reasonable doubt that prior to November 20, 1972 the defendant received notice of and knew of his duty to report for induction on that day, that he failed to do so and that his failure to do so was intentional and deliberate.[16]

Defendant's motion for a judgment of acquittal is denied. The court finds beyond a reasonable doubt that the defendant knowingly failed to perform a duty required of him under the Military Selective Service Act and the rules, regulations and directions promulgated thereunder, to wit, his duty to report for induction on November 20, 1972. Accordingly, the defendant is found guilty as charged.

The defendant is directed to appear for sentence, together with his counsel, on the 25th day of November, 1974, at 10 a. m., courtroom 2804. The defendant is further directed to appear at the

---

11. *See* United States v. Belgrave, 484 F.2d 915, 917 (3d Cir. 1973).

12. *See* Fisher v. United States, 413 F.2d 1034, 1035 (9th Cir. 1969); Graves v. United States, 252 F.2d 878, 879–882 (9th Cir. 1958).

13. *See* United States v. Belgrave, 484 F.2d 915 (3d Cir. 1973); Fisher v. United States, 413 F.2d 1034 (9th Cir. 1969); Graves v. United States, 252 F.2d 878 (9th Cir. 1958).

14. *See* United States v. Blakemore, 489 F.2d 193, 195 (6th Cir. 1973); United States v. Noah, 475 F.2d 688, 691 (9th Cir.), cert. denied, 414 U.S. 821, 94 S.Ct. 119, 38 L.Ed.2d 54 (1973); United States v. Evanchik, 413 F.2d 950, 953 (2d Cir. 1969); United States v. Dibrizzi, 393 F.2d 642, 646 (2d Cir. 1968); United States v. Llamas, 280 F.2d 392, 393–394 (2d Cir. 1960); United States

v. Beekman, 155 F.2d 580, 584 (2d Cir. 1946); United States v. Kulp, 365 F.Supp. 747, 766 (D.C.Pa.1973); United States v. Pawlak, 352 F.Supp. 794, 798 (S.D.N.Y. 1972).

15. United States v. Garrity, 433 F.2d 649, 652 (8th Cir. 1970); United States v. DeNarvaez, 407 F.2d 185, 188 (2d Cir.), cert. denied, 396 U.S. 822, 90 S.Ct. 62, 24 L.Ed.2d 72 (1969).

16. *See* United States v. Stewart, 472 F.2d 1114, 1118 (1st Cir. 1973); United States v. Lee, 458 F.2d 32 (9th Cir. 1972); United States v. Garrity, 433 F.2d 649, 652 (8th Cir. 1970); United States v. DeNarvaez, 407 F.2d 185, 188 (2d Cir.), cert. denied, 396 U. S. 822, 90 S.Ct. 62, 24 L.Ed.2d 72 (1969); cf. United States v. Bowen, 414 F.2d 1268, 1277 (3d Cir. 1969).

Probation Office of this court on Monday, October 21, 1974, at 10 a. m. In the event he is now a resident of San Francisco, California, if he prefers, he may appear at the United States District Court Probation Office, 450 Golden Gate Avenue, San Francisco, California, on Monday, October 21, 1974, at 10 a. m.